UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ANGELA JEAN HENDERSON, )
)
    Plaintiff, )
)
v. ) No.: 3:03-CV-703
) (VARLAN/GUYTON)
MICHAEL "MICK" REYDA, et al., )
)
    Defendants. )

## MEMORANDUM OPINION

This consolidated civil rights action is before the Court on the motions for summary judgment filed by Knox County [Doc. 36] and Michael "Mick" Reyda in his individual capacity [Doc. 49], along with supporting briefs [Docs. 37, 50, respectively]. The plaintiff has responded to both motions [Docs. 66, 95], the defendants have filed reply briefs [Docs. 82, 83, 99], and all of the parties have filed numerous exhibits in support of the pleadings [Docs. 38, 58, 69]. The Court has carefully considered the pending motions and related pleadings and finds that oral argument is not necessary.

For the reasons set forth herein, the defendants' motions for summary judgment will be granted such that plaintiff's federal claims will be dismissed with prejudice and plaintiff's state law claims will be remanded to the Circuit Court for Knox County.

## I. Relevant Facts

This case arises from an incident which occurred on December 30, 2002, at the Three Ridges Golf Course in Knox County, Tennessee. Defendant Reyda was on patrol as a deputy sheriff with the Knox County Sheriff's Department. At approximately 10:30 p.m. that evening, Reyda saw a pickup truck parked at the closed gate of the golf course and became suspicious. The golf course was closed and there had apparently been some recent break-ins and vandalism. Reyda approached the truck on foot with his flashlight and then climbed over the gate and began walking toward the golf course.

About that time, plaintiff Angela Henderson came running toward the truck from the golf course. Reyda questioned her about what she was doing and whether she was alone. Henderson told Reyda that she was alone and she was taking a walk. Reyda did not believe Henderson's explanation and asked for her identification. He then grabbed her arm in an attempt to escort her back to the truck at which point she resisted. At this point, the two versions of the facts diverge. Reyda testified that Henderson slapped him on the forehead. Henderson testified that Reyda grabbed her sweatshirt hood, dragged her down the hill and then slammed her to the ground. However, it is undisputed that Reyda handcuffed Henderson's arms behind her back, walked her to the vehicles, and placed her on the hood of her truck. It is also undisputed that Henderson had an object in one of her hands and that Reyda hit her hand or her back to force her to release the object, which turned out to be a set of keys.

2

Henderson claims she was taken to the Knox County Detention Facility and held for over nine hours before she was released on bail. Plaintiff was initially charged with assault, possession of marijuana, and possession of drug paraphernalia. Following a preliminary hearing on March 19, 2003, the Knox County General Sessions Court bound the assault charge over to the Grand Jury and the drug charges were dismissed. Plaintiff was indicted by the Grand Jury for assault on Officer Reyda and criminal trespass. Following a jury trial on December 15 and 16, 2003, in the Knox County Criminal Court, Henderson was acquitted of the criminal charges against her.[1]

## II. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish

---

[1]The record reflects that plaintiff filed a criminal warrant alleging assault against Reyda on December 13, 2003, and that he was acquitted of such charges following a trial in the General Sessions Court for Sevier County, Tennessee, on January 28, 2005.

a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**III.    Analysis**

    A.    <u>Reyda's Motion for Summary Judgment</u>

The complaint asserts 21 counts against Reyda, Knox County, and now-dismissed defendants Timothy Hutchison and Hartford Insurance Company. However, there are only three remaining counts which assert federal causes of action: counts fifteen, sixteen, and seventeen [Doc. 1 at ¶¶ 164-197]. Count 15 asserts a § 1983 claim for violation of plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution [Doc. 1 at ¶ 165]. Count 16 asserts a § 1983 claim for unlawful seizure without

4

probable cause in violation of plaintiff's rights under the Fourth Amendment to the United States Constitution [Doc. 1 at ¶ 176]. Count 17 asserts a § 1983 claim for violation of plaintiff's equal protection rights under the Fourteenth Amendment to the United States Constitution and Tenn. Code Ann. § 40-7-118.[2] Because the viability of plaintiff's federal causes of action is the key to this Court's jurisdiction, the following analysis will focus on those claims.

Defendant Reyda's memorandum of law in support of summary judgment summarily asserts that plaintiff's claims in counts 15 and 16 "fail; once the underlying claims fail (i.e. assaults/excessive force) there could be no violations of due process in the Fourth or Fifteenth Amendments." [Doc. 50 at p. 15.] Reyda's brief provides slightly more substantive opposition to the claims in count 17. Despite the inadequacy of Reyda's briefing, the Court will, nonetheless, examine the merits of plaintiff's claims against him.

It is worth noting at the outset that plaintiff has asserted claims against Reyda in his individual and his official capacity as a deputy sheriff of Knox County. To the extent that Reyda is sued in his official capacity, such claims are in essence claims against Knox County. *See Monell v. Department of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Shamaeizadeh v. Cunigan*, 338 F.3d 535,

---

[2]Although count 17 is captioned as "43 [sic] U.S.C. § 1983: Fourth Amendment Equal Protection," the Court assumes and interprets the complaint that plaintiff intends to assert an equal protection claim under the Fourteenth Amendment as stated in paragraph 188.

5

556 (6th Cir. 2003) ("A section 1983 action against a city official in his or her official capacity is treated as an action against the City entity itself.") (quoting *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992)). Thus, the Court's analysis of the claims against Reyda in his official capacity will be subsumed in the analysis of the claims against Knox County.

42 U.S.C. § 1983 provides a civil cause of action when a citizen is subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of law. It is well settled that § 1983 by its terms does not create any substantive rights but rather "merely provides remedies for deprivations of rights established elsewhere." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000)). To prevail on her § 1983 claims, Henderson "must establish that a person acting under color of state law deprived [her] of a right secured by the Constitution or laws of the United States." *Radvansky*, 395 F.3d at 302 (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)). In other words, Henderson must first show that she has suffered a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *McKinley v. City of Mansfield*, 404 F.3d 418, 429 (6th Cir. 2005).

    1.    <u>Due Process</u>

The Due Process Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff does not specify whether she is asserting a procedural or

6

substantive due process claim. She alleges only that "Defendant Reyda while acting under color of state law beat and used unlawful force against Plaintiff as specified herein and violated Plaintiff's clearly established rights guaranteed him [sic] pursuant to [sic] Fifth and Fourteenth Amendments to the United States Constitution." [Doc. 1 at ¶ 165.] To the extent that plaintiff is attempting to assert a substantive due process claim for Reyda's alleged use of unlawful force, that argument must fail as it is well settled that such claims are to be analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). As further explained in *Graham*:

> ...*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual sources of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Id*. at 395.[3] Thus, plaintiff cannot assert a substantive due process claim for "unlawful force" under the Fifth or Fourteenth Amendments.

To the extent that plaintiff is attempting to assert a procedural due process claim, that claim must also fail. The Court first questions what process plaintiff could be seeking prior to Reyda's alleged use of "unlawful force." With respect to any due process claim arising

---

[3]The Court notes that, while the facts set forth in the complaint could possibly be construed to allege a § 1983 claim for excessive force, the plaintiff has not pled such a claim, nor does she characterize her case as including such a claim in her responsive pleadings to the pending dispositive motions. The Court must assume that the 21 claims asserted by plaintiff were deliberately chosen by her and her counsel, who is experienced in such matters, and the Court will accordingly decline to construe the complaint as asserting a claim not pled. *See* Fed. R. Civ. P. 8(a).

7

from her arrest, it is well settled that the Fourth Amendment, not the Fifth or Fourteenth Amendments, establishes procedural protections in this part of the criminal justice area. *Radvansky,* 395 F.3d at 313. The Supreme Court has stated that "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial." *Gerstein v. Pugh,* 420 U.S. 103, 125 n.27 (1975)). The Court went on to note that "the Fourth Amendment probable cause determination is in fact only the first stage of an elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct." *Id.* Thus, because the Due Process Clause of the Fourteenth Amendment does not require any additional procedures beyond those mandated by the Fourth Amendment, the Court concludes that Reyda is entitled to judgment on this claim as a matter of law.

2. <u>Unlawful Seizure</u>

In count 16, plaintiff alleges that "Defendant Reyda while acting under color of state law unlawfully seized and arrested Plaintiff without probable cause as specified herein and violated Plaintiff's clearly established rights guaranteed him [sic] pursuant to [sic] Fourth Amendment to the United States Constitution." [Doc. 1 at ¶ 176.] In order to determine whether Henderson's arrest was constitutional under the Fourth Amendment, the Court must determine whether probable cause existed for the arrest. As explained by the Sixth Circuit, the question is "'whether, at the moment the arrest was made, [Reyda] had probable cause

to make it – whether at that moment the facts and circumstances within [his] knowledge and of which [he] had reasonable trustworthy information were sufficient to warrant a prudent man in believing that [Henderson] had committed or was committing an offense.'" *Smith v. Thornburg,* 136 F.3d 1070, 1076 (6th Cir. 1998); *Donovan v. Thames,* 105 F.3d 291, 298 (6th Cir. 1997) (quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964)).

In this case, that question has already been answered by the prosecution of the criminal charges against Henderson. Where "the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Smith*, 136 F.3d at 1077. As reflected in the record, the Knox County General Sessions Court conducted a preliminary hearing on the criminal charges against Henderson on March 19, 2003. Plaintiff's counsel had the opportunity to and did in fact extensively cross-examine Reyda regarding the assault charge. The General Sessions Court bound the assault charge over to the Grand Jury and Henderson was indicted for assault on Officer Reyda. Thus, the General Sessions Court found that Reyda had probable cause to arrest Henderson for assault. Accordingly, because plaintiff had the opportunity to contest probable cause at the preliminary hearing, the General Sessions Court's finding of probable cause forecloses relitigation of that issue in this case. Defendant Reyda is entitled to judgment as a matter of law on this count.

### 3. Equal Protection

Plaintiff alleges in count 17 that "By making a custodial arrest of Plaintiff, Defendant Reyda violated Plaintiff's clearly established rights guaranteed him [sic] pursuant to Fourteenth Amendment to the United States Constitution to the equal protection of Tennessee Laws as provided in T.C.A. § 40-7-118 requiring the issuance of a citation in lieu of custodial arrest." [Doc. 1 at ¶ 188.] Tenn. Code Ann. § 40-7-118(b)(1) provides in pertinent part that:

> A peace officer who has arrested a person for the commission of a misdemeanor committed in such peace officer's presence ... shall issue a citation to such arrested person to appear in court in lieu of the continued custody and the taking of the arrested person before a magistrate.

However, sections 40-7-118(b) and (c) identify several exceptions to the rule in which an officer "may issue" a citation in lieu of continued custody or in which a citation may not be issued. Tenn. Code Ann. §§ 40-7-118(b) & (c).

Plaintiff appears to be arguing that Tennessee law, as set forth in Tenn. Code Ann. § 40-7-118, provides a fundamental right to be issued a citation in lieu of custodial arrest and that this right is enforceable through 42 U.S.C. §§ 1983 and 1988. It is clear, however, that recovery under § 1983 requires proof of a constitutional violation. *Saucier*, 533 U.S. at 201; *McKinley*, 404 F.3d at 429. Whether or not Reyda violated state law by arresting Henderson instead of issuing her a citation, she still must show that her constitutional rights have been violated for relief under § 1983. A state statute cannot "create" a federal constitutional right. *Harrill v. Blount County, Tennessee*, 55 F.3d 1123, 1125 (6th Cir. 1995). Plaintiff's reliance

10

on *Bush v. Gore*, 531 U.S. 98 (2000), does not alter this principle. Thus, the violation of a right created and recognized under state law is not actionable under § 1983. *Harrill*, 55 F.3d at 1125.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has stated that this language "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill,* 521 U.S. 793, 799 (1997). The States cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference. *Id.*; *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam); *Radvansky*, 395 F.3d at 312.

In addition to failing to show that she has suffered the deprivation of a fundamental constitutional right, plaintiff has failed to show that, while exercising such a right, she was targeted as part of a suspect class or treated any differently than others similarly situated without any rational basis. Inasmuch as Henderson has merely alleged that she was treated unfairly as an individual by Reyda's actions, her equal protection claim must be dismissed. *See Radvansky*, 395 F.3d at 312-13; *Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir.1999).

Finally, with respect to plaintiff's argument that 42 U.S.C. § 1988 provides a federal remedy for violation of plaintiff's rights pursuant to Tennessee law, it is well settled that § 1988 does not create federal causes of action for violation of civil rights. *Moor v. County of Alameda*, 411 U.S. 693, 703-704 (1973) ("we do not believe that the section [1988], without

more, was meant to authorize the wholesale importation into federal law of state causes of action"); *Monell*, 436 U.S. at 701 n.66 ("42 U.S.C. § 1988 cannot be used to create a federal cause of action where § 1983 does not otherwise provide one"); *Hall v. Wooten*, 506 F.2d 564, 568 (6th Cir. 1974) ("section 1988 does not create federal causes of action for violation of civil rights").

For these reasons, defendant Reyda is entitled to judgment as a matter of law as to plaintiff's equal protection claim.

B.  Knox County's Motion for Summary Judgment

Liability under § 1983 may be imposed against a local governmental entity only where a "custom" or "policy" attributable to the governmental entity led to the individual defendant's unconstitutional conduct. *Monell*, 436 U.S. at 691. Having determined that Henderson cannot sustain any of her constitutional claims against Reyda, Henderson likewise cannot sustain a § 1983 claim against Knox County. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("neither *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002); *Smith*, 136 F.3d at 1078 n.12.

Moreover, the facts which Henderson asserts in support of her § 1983 claims do not in any way comprise a "policy" or a "custom" by which Knox County may be liable under

12

§ 1983.[4] For counts 15, 16, and 17, the sole allegation as to Knox County is that "Knox County is responsible to Plaintiff for her damages for these acts of Defendant Reyda pursuant to T.C.A. § 8-8-302." [Doc. 1 at ¶¶ 168, 172, 179, 183, 191, 195.] Tenn. Code Ann. § 8-8-302 provides that "[a]nyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office."

It appears that plaintiff is attempting to use this state statute to impose liability on Knox County in a form of respondeat superior liability. However, it is well established that Knox County cannot be held liable on the basis of respondeat superior under § 1983 for an injury inflicted by its employees or agents. *Monell*, 436 U.S. at 694. Tenn. Code Ann. § 8-8-302 does not extend the scope of § 1983 liability and this argument has previously been rejected by this Court. *Wilson v. Morgan*, No. 3:99-cv-461 (E.D. Tenn. Oct. 24, 2001) (Murrian, J.); *Seiber v. Cooper*, 522 F. Supp. 157, 158-59 (E.D. Tenn. 1981).

Accordingly, the Court finds that Knox County is entitled to judgment as a matter of law as to plaintiff's federal claims.

C. State Law Claims

---

[4] A municipal "policy" for purposes of § 1983 requires a "deliberate choice to follow a course of action ... made from among various alternatives by the official or the officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A "custom" that is a basis for a civil rights violation must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993).

13

In light of the Court's ruling on plaintiff's federal claims as set forth above, the Court will decline to continue to exercise supplemental jurisdiction over plaintiff's state law causes of action. 28 U.S.C. § 1367(c). Accordingly, plaintiff's state law claims, which are numerous and total 16 counts of the plaintiff's complaint, will be remanded to the Circuit Court for Knox County, Tennessee for further proceedings.

**IV. Conclusion**

For the reasons set forth herein, the defendants' motions for summary judgment [Docs. 36, 49] will be granted whereby plaintiff's federal claims will be dismissed with prejudice and plaintiff's state law claims will be remanded to the Circuit Court for Knox County, Tennessee.

Order accordingly.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE